## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **DARRYN ROBERT BURGESS,** | § | |
| **TDCJ No. 02047103,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **Civil No. SA-19-CA-0541-DAE** |
| | § | |
| **BOBBY LUMPKIN,[1] Director,** | § | |
| **Texas Department of Criminal Justice,** | § | |
| **Correctional Institutions Division,** | § | |
| | § | |
| **Respondent.** | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are *pro se* Petitioner Darryn Robert Burgess's Amended Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 9) and supplemental memorandum in support (ECF No. 10), Respondent Bobby Lumpkin's Answer (ECF No. 15), and Petitioner's Reply (ECF No. 19) thereto. Also before the Court are several supplemental pleadings (ECF Nos. 21, 26, and 28) filed by Petitioner concerning the claims raised in his amended § 2254 petition. Having reviewed the record and pleadings submitted by both parties, the Court concludes Petitioner is not entitled to relief under the standards prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *See* 28 U.S.C. § 2254(d). Petitioner is also denied a certificate of appealability.

---

[1]    The previous named Respondent in this action was Lorie Davis. On August 10, 2020, Bobby Lumpkin succeeded Davis as Director of the Texas Department of Criminal Justice, Correctional Institutions Division. Under Rule 25(d) of the Federal Rules of Civil Procedure, Lumpkin is automatically substituted as a party.

# I. __Background__

The facts of Petitioner's case were accurately summarized by the Texas Fourth Court of

Appeals on direct appeal:

On the morning of November 10, 2013, [Petitioner] sought treatment at Christus Alon Health Emergency Room in San Antonio for an apparent snake or spider bite on his right arm.  Upon his arrival, he was treated by a triage nurse who quickly realized there were no observable signs of injury.  The nurse, who believed [Petitioner] was hallucinating due to his paranoia and other irrational behavior, reported her findings to the attending physician.  The attending physician, Dr. Portillo, learned that [Petitioner] had recently used methamphetamine and marijuana.  Dr. Portillo concluded that [Petitioner] was suffering from some form of psychosis and directed the nursing staff to initiate an emergency detention.

San Antonio Police Officer Roberto Aguilar was called to the scene to detain and transport [Petitioner] to a psychological facility for further evaluation. Officer Aguilar arrived, introduced himself to [Petitioner], and spoke with him for about 15–20 minutes.  [Petitioner] insisted he had been poisoned by a syringe or spiders, and his demeanor vacillated between calm and agitated.  Meanwhile, Officer Yvette Meade arrived as backup.  When Officer Aguilar informed [Petitioner] that he was being detained for medical reasons and attempted to handcuff him, [Petitioner] became agitated and began to physically resist. [Petitioner]'s mother had arrived and requested to take [Petitioner] to the hospital herself.  Upon the officers' refusal, she grabbed Officer Meade's arm and tried to prevent the officers from handcuffing her son.  Officer Meade told [Petitioner]'s mother several times to move away and eventually pushed her back.  When Officer Meade touched [Petitioner]'s mother, [Petitioner] became irate, leading to a further escalation of the situation.

With the officers still trying to place the handcuffs on him, [Petitioner], the larger man, began pushing and wrestling to get away.  [Petitioner] pushed Officer Aguilar off of him, and raised his hands up in a fighting stance.  Officer Aguilar used his Taser on [Petitioner] in an attempt to subdue him, but it only further infuriated him.  After ripping the Taser probes off his chest, [Petitioner] attacked both officers.  [Petitioner] punched Officer Aguilar in his left eye, causing a flow of blood and knocking him to the ground.  [Petitioner] then turned and punched Officer Meade twice in her face, causing her to lose consciousness and fall to the floor.  Officer Aguilar saw Officer Meade fall and immediately attempted to rise to his feet, but [Petitioner] punched Aguilar in the face again with such force that Aguilar saw white lights.

2

The struggle between [Petitioner] and Officer Aguilar continued for some time in [Petitioner]'s favor, with [Petitioner] landing multiple punches to Aguilar's head while Aguilar tried to defend himself and punch back. However, because of the bleeding above Officer Aguilar's left eye, his vision was blurry. At one point, both men fell to the ground, with Officer Aguilar landing on his back and [Petitioner] landing on top of him and continuing to punch Aguilar in the face. With his left arm pinned down by the weight of [Petitioner]'s body, Officer Aguilar drew his handgun with his right hand and fired at [Petitioner], but missed. [Petitioner] immediately pinned Officer Aguilar's hand holding the gun against the wall and attempted to pry the gun out of the officer's hand. Upon hearing the gunshot, Officer Meade, who had recently regained consciousness, noticed Officer Aguilar struggling on the floor with [Petitioner]. Officer Meade was able to get up and make her way over to the two men. Officer Aguilar was yelling at Officer Meade that [Petitioner] was trying to take away his gun and instructed her to shoot [Petitioner]. Officer Aguilar testified that, at that moment, he believed he would probably lose his life. Officer Meade, whose own vision was blurry from a concussion, straddled [Petitioner]'s back and shot him at close range, ending the struggle. Officer Aguilar, who was bleeding from his face as well as from a gunshot wound to his lower leg, was taken to the hospital and treated for his injuries.

[Petitioner] was indicted on three counts arising out of his struggle with Officer Aguilar: Aggravated Assault of a Public Servant, which caused the officer's firearm to discharge and strike him (Count I); Assault of a Public Servant, by striking the officer with his hands (Count II); and Taking or Attempting to Take a Weapon (i.e., firearm) from a Peace Officer (Count III). At the conclusion of his trial, the jury acquitted [Petitioner] on Counts I and III involving the firearm, but found him guilty on Count II involving assault committed with his hands. The jury also made an affirmative finding that [Petitioner] used a deadly weapon, to wit: his hands, in the commission of the assault. Because [Petitioner] pled true to two prior felony convictions, the punishment range was enhanced to confinement for 25–99 years or life. The trial court sentenced [Petitioner] to 50 years' imprisonment and imposed a $2,000 fine.

*Burgess v. State*, No. 04-16-00009-CR, 2016 WL 7119045, at *1–2 (Tex. App.—San Antonio, Dec. 7, 2016, no. pet.); (ECF No. 16-2 at 1-4).

Petitioner appealed to the Texas Fourth Court of Appeals which affirmed the conviction in an unpublished opinion. *Id*. Petitioner did not file a petition for discretionary review with the Texas Court of Criminal Appeals (TCCA). Instead, Petitioner challenged the constitutionality of his state court conviction by filing a state habeas corpus application in November 2017. *Ex parte*

*Burgess*, No. 88,173-01 (Tex. Crim. App.); (ECF Nos. 17-10 through 17-21).  However, the TCCA eventually denied the application without written order on May 1, 2019, based on the findings of the trial court.  (ECF No. 16-35).

Petitioner initiated the instant proceedings by filing a petition for federal habeas relief on May 20, 2019.  (ECF No. 1).  Petitioner later amended his petition (ECF No. 9) accompanied by a supplemental memorandum in support (ECF No. 10).    In the amended petition and memorandum, Petitioner raises the same allegations that were rejected by the TCCA during his state habeas proceedings:  (1) the trial court improperly amended the indictment by adding an instruction on the use of a deadly weapon (his hands) in the court's charge to the jury, (2) his trial counsel was ineffective for failing to seek a dismissal of the charges via a directed verdict or challenge the improperly-amended indictment in a motion for new trial, (3) his appellate counsel was ineffective for failing to challenge the improperly-amended indictment on direct appeal, (4) the trial court lost jurisdiction when it amended the indictment with the deadly weapon jury charge, (5) the judgment against him is void because it is based on an indictment that was amended by the State and not by a grand jury, and (6) the prosecution committed misconduct and fraud by amending the indictment with new charges against him without submitting the new charges to the grand jury.

## II.  <u>Standard of Review</u>

Petitioner's federal habeas petition is governed by the heightened standard of review provided by the AEDPA.  28 U.S.C.A. § 2254.  Under § 2254(d), a petitioner may not obtain federal habeas corpus relief on any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as

4

determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Brown v. Payton*, 544 U.S. 133, 141 (2005). This intentionally difficult standard stops just short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996)).

A federal habeas court's inquiry into unreasonableness should always be objective rather than subjective, with a focus on whether the state court's application of clearly established federal law was "objectively unreasonable" and not whether it was incorrect or erroneous. *McDaniel v. Brown*, 558 U.S. 120 (2010); *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003). Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable, regardless of whether the federal habeas court would have reached a different conclusion itself. *Richter*, 562 U.S. at 102. Instead, a petitioner must show that the decision was objectively unreasonable, which is a "substantially higher threshold." *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007); *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003).

So long as "fairminded jurists could disagree" on the correctness of the state court's decision, a state court's determination that a claim lacks merit precludes federal habeas relief. *Richter*, 562 U.S. at 101 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In other words, to obtain federal habeas relief on a claim previously adjudicated on the merits in state court, Petitioner must show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103; *see also Bobby v. Dixon*, 565 U.S. 23, 24 (2011).

### III.  Merits Analysis

A.      **The Jury Charge** (Claims 1, 4 and 5).

Petitioner was indicted on three counts arising from his struggle with Officer Aguilar. The jury acquitted Petitioner on Count I (aggravated assault of a police officer) and Count III (taking or attempting to take an officer's weapon), but found him guilty of Count II (assault against a public servant).  Pursuant to a special issue included in the jury charge, the jury also made an affirmative finding that Petitioner used his hands as a deadly weapon during the commission of the offense.[2]

Petitioner now contends the trial court erred by including the deadly weapon instruction in the jury charge.  According to Petitioner, the deadly weapon instruction altered the charged offense from simple assault on a public servant to assault on a public servant with use of a deadly weapon.  As a result, he argues the deadly weapon instruction was actually an untimely amendment to the indictment that should have been presented to the grand jury first.  He also contends the trial court lost jurisdiction when it amended the indictment and that the judgment against him is now void.  These allegations were all rejected by the TCCA during Petitioner's

---

[2]      The deadly weapon instruction contained in the jury charge read as follows:

> You are also instructed that if you find the defendant guilty of the offense of assault on a public servant as charged in Count II of the indictment, you will next determine whether the defendant used or exhibited a deadly weapon, namely, his hands during the commission of the offense.

> "Deadly weapon" means anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.

> Therefore, if you find from the evidence beyond a reasonable doubt that a deadly weapon, namely: his hands, were used or exhibited during the commission of the offense, and that the defendant used or exhibited the deadly weapon, you will so state in your verdicts.

(ECF No. 16-9 at 175).

state habeas proceedings.  As discussed below, Petitioner fails to demonstrate the state habeas court's rulings were either contrary to, or an unreasonable application of, Supreme Court precedent.

To start, Petitioner's arguments that the trial court erroneously amended the indictment are a matter of state law and not grounds for federal habeas relief.  *See Alexander v. Louisiana*, 405 U.S. 625, 633 (1972) (recognizing that federal guarantee of indictment by a grand jury has not been applied to the states); *see also West v. Thaler*, No. 1:08-cv-233-JRN, 2010 WL 538258, at *8 (W.D. Tex. Feb. 3, 2010) (finding similar claims do not raise an issue of federal constitutional dimension); *Cady v. Quarterman*, No. 3:07-cv-0611-D, 2009 WL 1437832, at *5 (N.D. Tex. May 22, 2009) (same).

In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  It is beyond the scope of federal habeas review to review the correctness of the state court's interpretation of state law.  *See Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (stating that the Court has repeatedly held that "federal habeas corpus relief does not lie for errors of state law.")(citations omitted); *Fuller v. Johnson*, 158 F.3d 903, 908 (5th Cir. 1998) (failure to follow Texas law is not reviewable).  Here, the state habeas court denied Petitioner's claim on its merits, and this Court must defer to the state court's determination of Texas law.

Even if the Court could review Petitioner's allegations, he fails to demonstrate that the trial court erred in submitting the deadly weapon instruction to the jury.  As pointed out by Respondent, the State is not required to plead the use of a deadly weapon in an indictment under Texas law.  *See Ex parte Patterson*, 740 S.W.2d 766, 775-76 (Tex. Crim. App. 1987) *overruled on other grounds*, 769 S.W.2d 938 (Tex. Crim. App. 1989).  Rather, a trial court is authorized to

enter a deadly weapon finding where the jury has (1) found guilt as alleged in the indictment and the deadly weapon has been specifically pled as such using "deadly weapon" nomenclature in the indictment, (2) found guilt as alleged in the indictment but, though not specifically pled as a deadly weapon, the weapon pled is per se a deadly weapon, or (3) affirmatively answered a special issue on deadly weapon use. *Lafleur v. State*, 106 S.W.3d 91, 93 (Tex. Crim. App. 2003) (citation omitted). This is so because a deadly weapon finding changes only the character—rather than the degree—of punishment, in that it is a finding which may "detrimentally shade" the character of his custody. *Patterson*, 740 S.W.2d at 775-76. Therefore, under state law, the State may give notice of its intent to seek a deadly weapon finding by way of a special jury instruction so long as the defendant receives notice of this intent. *Id*. Here, the State filed its notice on October 12, 2015, a day before jury selection began for Petitioner's trial. (ECF No. 16-9 at 127-29). Thus, the trial court's submission of the deadly weapon instruction was lawful.

Finally, Petitioner fails to demonstrate he would be entitled to federal habeas relief even if the trial court's action was erroneous. Again, improper jury instructions in state criminal trials do not generally form the basis for federal habeas relief. *McGuire*, 502 U.S. at 71. Thus, in examining such a claim, the only inquiry for the Court is whether "there was prejudice of constitutional magnitude." *Galvan v. Cockrell*, 293 F.3d 760, 764-65 (5th Cir. 2002). A criminal defendant does have a due process right to notice of the charges against him so that he can prepare a trial defense. *Ables v. Scott*, 73 F.3d 591, 593 (5th Cir. 1996) (citing *Cole v. Arkansas*, 333 U.S. 196, 201 (1948); *McKay v. Collins*, 12 F.3d 66, 69 (5th Cir. 1994)). To a lesser degree, he also has a due process right to notice of sentencing issues such as an intent to seek a deadly weapon finding. *Id*. at 593-94. Because Petitioner was given notice of the State's

intent to seek a deadly weapon finding prior to his trial, however, no violation of his due process rights occurred.  As there was no "prejudice of constitutional magnitude," federal habeas relief is unwarranted.

**B.**    **Trial Counsel** **(Claim 2).**

In a related allegation, Petitioner contends his trial counsel was ineffective for failing to challenge the deadly weapon instruction that was included in the court's jury charge. Specifically, Petitioner faults counsel for failing to seek a dismissal of the new charges through a motion for directed verdict or challenge the improperly amended indictment in a motion for new trial.  Petitioner raised both allegations during his state habeas proceedings which the TCCA rejected.  As discussed below, Petitioner fails to demonstrate the state habeas court's rejection of these challenges was contrary to, or an unreasonable application of, Supreme Court precedent.

1.    The *Strickland* Standard

The Court reviews Sixth Amendment claims concerning the alleged ineffective assistance of trial counsel (IATC claims) under the familiar two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984).  Under *Strickland*, a petitioner cannot establish a violation of his Sixth Amendment right to counsel unless he demonstrates (1) counsel's performance was deficient and (2) this deficiency prejudiced his defense.  466 U.S. at 687-88, 690.  According to the Supreme Court, "[s]urmounting *Strickland*'s high bar is never an easy task."  *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

When determining whether counsel performed deficiently, courts "must be highly deferential" to counsel's conduct, and a petitioner must show that counsel's performance fell beyond the bounds of prevailing objective professional standards.  *Strickland,* 466 U.S. at 687-89.  Counsel is "strongly presumed to have rendered adequate assistance and made all significant

decisions in the exercise of reasonable professional judgment." *Burt v. Titlow*, 571 U.S. 12, 22 (2013) (quoting *Strickland*, 466 U.S. at 690). To demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Under this prong, the "likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112. A habeas petitioner has the burden of proving both prongs of the *Strickland* test. *Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

Finally, IATC claims are considered mixed questions of law and fact and are analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010). Where, as here, the state court adjudicated the IATC claims on the merits, a court must review a petitioner's claims under the "doubly deferential" standards of both *Strickland* and Section 2254(d). *See Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (citing *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)); *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009). In such cases, the "pivotal question" is not "whether defense counsel's performance fell below *Strickland*'s standards," but whether "the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S at 101. That is to say, the question to be asked in this case is not whether counsel's actions were reasonable, but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*. at 105.

2.    Analysis under *Strickland*

Petitioner contends his trial counsel, James Oltersdorf, was ineffective for failing to challenge the deadly weapon instruction contained in the trial court's jury charge. Petitioner's argument is the same as before—the deadly weapon instruction altered the charged offense such

10

that it essentially amended the indictment without the approval of a grand jury.  According to Petitioner, Oltersdorf should have raised this argument in either a motion for directed verdict or motion for new trial.

Petitioner raised these allegations during his state habeas proceedings.  In recommending the denial of Petitioner's application, the state habeas trial court adopted Oltersdorf's explanations (given by affidavit) and issued these additional findings:

> 24.  The court finds that Mr. Oltersdorf's decision to not move for a directed verdict was not ineffective.  The State presented evidence that was sufficient to prove the offenses alleged.  If the evidence was legally sufficient, then a directed verdict would not have issued, and therefore trial counsel was not ineffective.  In other words, under these facts, the trial court concludes that moving for a directed verdict would not have changed the outcome of the proceedings.  This claim is therefore without merit.

> 25.  [Petitioner] also alleges that counsel was ineffective for failing to challenge the deadly weapon instruction on appeal.  The issue raised on direct appeal was that the evidence was insufficient to support the jury's affirmative finding that he used his hands as a deadly weapon during the commission of the assault.  The court of appeals held that the use of hands as a deadly weapon in [Petitioner]'s case is supported by the evidence. Thus, this claim is without merit.

> 26.  Mr. Oltersdorf states that he objected to the use of hands as a deadly weapon in Count II.  Mr. Oltersdorf did call the court's attention to the deadly weapon allegation; however, his "objection" was not that he was not given enough notice.  It appears, instead, that Mr. Oltersdorf was concerned that Count II was going to be enhanced to an aggravated assault because of the deadly weapon finding.  When the prosecutor clarified that Count II alleged only an assault, Mr. Oltersdorf did not "further" object to the deadly weapon issue.

> 27.  Although Mr. Oltersdorf states that the State filed a Notice of Intent to Seek a Deadly Weapon as to Count II "the day the case was called to trial," the State's notice of intent to seek a deadly weapon finding in Count II was actually filed one day before jury selection began and two days before testimony began.

28.     Mr. Oltersdorf did not argue in his closing argument that Count II did not involve the use of [Petitioner]'s hands as a deadly weapon.

29.     The court finds that it was Mr. Oltersdorf's trial strategy to allow the jury to consider Count II, and the hands as a deadly weapon under Count II, as a compromise so that they would reject Count I.   And if they rejected Count I, he believed they would also have rejected Count II.   Mr. Oltersdorf states that his strategy was to persuade the jury that the police officer accidentally shot himself.

30.     Mr. Oltersdorf was aware, and not surprised, that [Petitioner]'s hands could have been perceived as a deadly weapon.   Mr. Oltersdorf points to the fact that [Petitioner] knocked out one officer with the use of his hands. Further, at the time [Petitioner] was shot, he was on top of the officer struggling over the gun.

31.     The court finds that Mr. Oltersdorf's motivation for not objecting to the timing of the deadly weapon notice filed by the State was based on this trial strategy.

32.     Mr. Oltersdorf's supplemental response to the additional allegation makes it clear that his trial strategy was to avoid a conviction of Aggravated Assault Upon a Public Servant in Count I, which he did.   Based upon the evidence, Mr. Oltersdorf viewed Count II as a compromise which would potentially result in an acquittal of Counts I and III.

33.     The trial court concludes that, had Mr. Oltersdorf objected to the State's deadly weapon notice as being untimely, or had he requested a continuance (which may have been granted by the court), there is not a reasonable possibility that either his trial strategy or the outcome of the proceeding would have changed.

34.     Further, the court finds that it did not err in failing to consider whether the State's notice of intent to seek a deadly weapon finding was untimely, and it did not err in entering a deadly weapon finding under these facts, particularly since Mr. Oltersdorf did not object to the timing of the deadly weapon notice nor seek a continuance.

35.     Finally, as noted above, because of Mr. Oltersdorf's stated trial strategy, this court finds that he was not ineffective for failing to challenge the State's notice of intent to seek a deadly weapon as to Count II.

36.    Based on the evidence presented at trial, there is no indication that the outcome of the proceeding would have changed had the State given notice of its intent to seek a deadly weapon sooner.  Mr. Oltersdorf does not represent that his trial strategy would have been different.  In fact, his stated trial strategy was to focus his defense more on Counts I and III, and leave Count II as a compromise.

(ECF No. 17-6 at 33-35).  The TCCA adopted the trial court's findings when it denied relief without written order.  (ECF No. 16-35).

Petitioner fails to show that the state court's ruling was contrary to, or involved an unreasonable application of, federal law, or that it was an unreasonable determination of the facts based on the evidence in the record.  The trial court's findings thoroughly explain that Mr. Oltersdorf's failure to challenge the deadly weapon instruction was strategic, and regardless, that any objection by counsel would have been futile.  Petitioner has not shown that this determination "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

Moreover, as discussed in the previous section, this Court has independently reviewed the record of these proceedings and finds that counsel's failure to challenge the instruction was neither deficient nor prejudicial to Petitioner's defense.  The record does not reflect that the jury charge was wrong under state law, that Petitioner was deprived of adequate notice of the State's intent to seek a deadly weapon finding, or that the deadly-weapon instruction "so infected the entire trial that the resulting conviction violates due process." *McGuire*, 502 U.S. at 72 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). Looking at the challenged instruction in the context of the overall charge, Petitioner also does not show that the jury was likely to misapply the deadly-weapon instruction or that the state court was unreasonable in finding the jury charge sufficient. *See, e.g., Thacker v. Dretke*, 396 F.3d 607, 615 (5th Cir. 2005).

For these reasons, Petitioner's trial counsel cannot reasonably be faulted for failing to challenge the deadly weapon instruction in either a motion for directed verdict or motion for new trial. *See Miller v. Thaler*, 714 F.3d 897, 904 n.6 (5th Cir. 2013) (counsel is not required to make futile motions or objections); *Roberts v. Thaler*, 681 F.3d 597, 612 (5th Cir. 2012) ("the failure to lodge futile objections does not qualify as ineffective assistance") (quoting *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990)); *Ward v. Dretke*, 420 F.3d 479, 498 (5th Cir. 2005) (counsel not ineffective for failing to lodge what would likely have been a futile objection). Consequently, viewing this allegation under the deferential standard that applies on federal habeas review, Petitioner has not shown that the state court's decision was objectively unreasonable or that he is entitled to relief on his IATC claim.

## C.   __Appellate Counsel__ (Claim 3).

Petitioner next contends he received ineffective assistance of counsel during his direct appeal proceedings. A criminal defendant is constitutionally entitled to effective assistance of appellate counsel when he has a right to appeal under state law. *Evitts v. Lucey*, 469 U.S. 387 (1985); *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000). The familiar standard set out in *Strickland* to prove that counsel rendered unconstitutionally ineffective assistance applies equally to both trial and appellate attorneys. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Dorsey v. Stephens*, 720 F.3d 309, 319 (5th Cir. 2013). Thus, to obtain relief, Petitioner must demonstrate that (1) appellate counsel's conduct was objectively unreasonable under then-current legal standards, and (2) there is a reasonable probability that, but for appellate counsel's deficient performance, the outcome of Petitioner's appeal would have been different. *See Robbins*, 528 U.S. at 285; *Higgins v. Cain*, 720 F.3d 255, 260-61 (5th Cir. 2015). He does neither.

Petitioner contends appellate counsel was ineffective for failing to challenge the improper amendment of his indictment with the deadly weapon jury instruction.  But appellate counsel is not required to raise every possible non-frivolous claim on appeal.  *See Jones v. Barnes*, 463 U.S. 745, 751-52 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues.").  As discussed previously, any challenge to the trial court's jury instruction likely would have been fruitless, as the State is not required to plead the use of a deadly weapon in an indictment under Texas law and Petitioner received adequate notice of the State's intent to seek a deadly weapon finding.

Because the allegation that Petitioner contends should have been raised on appeal lacks merit, appellate counsel was not deficient for failing to raise it.  For the same reason, there is no likelihood Petitioner would have obtained relief had the claim been raised on direct appeal, and therefore no prejudice was caused by appellate counsel's failure to raise it.  Petitioner's allegation concerning appellate counsel was rejected by the state court during his state habeas proceedings, and Petitioner has not shown this rejection on the merits to be contrary to, or an unreasonable application of, the *Strickland* standard.  *See Richter*, 562 U.S. at 101.  Federal habeas relief is therefore denied.

### D.   <u>Prosecutorial Misconduct</u> (Claim 6).

In his final allegation, Petitioner contends the prosecution committed misconduct and fraud by amending the indictment with new charges—the deadly weapon jury instruction—without submitting the new charges to the grand jury.  According to Petitioner, the prosecution

brought these new charges against him in retaliation for choosing to go to trial. No argument or authority is provided by Petitioner concerning his allegations of malicious prosecution. For this reason alone, Petitioner's claim could be denied.

Under Rule 2(c) of the Rules Governing Section 2254 Cases, a petitioner is required to plead facts in support of his claims. Conclusory allegations do not state a claim for federal habeas corpus relief and are subject to summary dismissal. *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983) (holding "mere conclusory allegations do not raise a constitutional issue in a habeas proceeding"); *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990) (same). Here, Petitioner's allegation is conclusory, speculative, and unsupported by any evidence or facts. "Absent evidence in the record," this Court cannot "consider a habeas petitioner's bald assertions on a critical issue in his pro se petition . . ., unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value." *Ford v. Davis*, 910 F.3d 232, 235 (5th Cir. 2018) (citing *Ross*, 694 F.2d at 1011). Thus, habeas relief is unavailable because the claim is conclusory. *Ross*, 694 F.2d at 1011.

Moreover, Petitioner raised this allegation during his state habeas proceeding which was denied by the state habeas court. In rejecting the allegation, the state court concluded that the State provided Petitioner adequate notice of its intent to seek a deadly weapon finding prior to trial. (ECF No. 17-6 at 32). Petitioner has not even attempted to demonstrate that this decision was either contrary to, or an unreasonable application of, clearly established federal law. In addition, as discussed throughout this opinion, the State is not required under Texas law to plead the use of a deadly weapon in an indictment. Consequently, Petitioner's claim that the prosecution committed misconduct by not presenting the deadly weapon instruction to the grand jury wholly lacks merit. Relief is therefore denied.

## IV.  Certificate of Appealability

The Court must now determine whether to issue a certificate of appealability (COA).  *See* Rule 11(a) of the Rules Governing Section 2254 Proceedings; *Miller–El v. Cockrell,* 537 U.S. 322, 335-36 (2003) (citing 28 U.S.C. § 2253(c)(1)).  A COA may issue only if a petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  If a district court rejects a petitioner's constitutional claims on the merits, the petitioner must demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).  This requires a petitioner to show "that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Miller–El*, 537 U.S. at 336 (citation omitted).

A district court may deny a COA *sua sponte* without requiring further briefing or argument.  *See Alexander v. Johnson,* 211 F.3d 895, 898 (5th Cir. 2000).  For the reasons set forth above, the Court concludes that jurists of reason would not debate the conclusion that Petitioner was not entitled to federal habeas relief.  As such, a COA will not issue.

## V.  Conclusion and Order

Petitioner has failed to establish that the state court's rejection of the aforementioned claims on the merits during his state habeas proceedings was either (1) contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) based on an unreasonable determination of the facts in light of the evidence presented during Petitioner's state trial and habeas corpus proceedings.  Accordingly, based on the foregoing reasons, **IT IS HEREBY ORDERED** that:

17

1.      Federal habeas corpus relief is **DENIED** and Petitioner Darryn Robert Burgess's amended § 2254 petition (ECF No. 9) is **DISMISSED WITH PREJUDICE**;

2.      No Certificate of Appealability shall issue in this case; and

3.      All other motions, if any, are **DENIED**, and this case is now **CLOSED**.

It is so **ORDERED**.

**SIGNED** on March 16, 2021.

_____
**DAVID A. EZRA**
**SENIOR U.S. DISTRICT JUDGE**

18